UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 23-CR-80205-ROSENBERG

UNITED STATES OF AMERICA,
    Plaintiff,

vs.

MALIK ATKINSON,
    Defendant.
_____/

## DEFENDANT'S MOTION FOR DOWNWARD VARIANCE & SENTENCING MEMORANDUM

Malik Atkinson is a 26-year old child in a man's body. Before his arrest, he lived with his father, a local high school teacher. His mother, a former college basketball coach, lives in an assisted living facility because she suffers from dementia. She does not recognize her son anymore. In his spare time, Malik liked to play video games and spend time at comic book stores where he played role-playing games competitively. When he was not doing those things, he had an internship at a bank he hoped would turn into a career. That hope is now gone.

Instead, the sentencing guidelines recommend a life sentence and the government will surely ask for lengthy punishment. He engaged in consensual sexual relationships with two underage girls he met online and recorded those exploits. Though he has admitted his conduct and accepted responsibility for it, the guidelines provide him no relief. Nor do they consider his youth – significant mitigation according to both science and the Supreme Court. With better options than simply

1

locking him in a cage forever, he asks this Court show him mercy and consider a sentence of ten years in prison followed by a lengthy term of supervised release.

### A. Both science and the law recognize youth as significant mitigation.

The Supreme Court has long recognized youth as significant mitigation for criminal behavior. Indeed, the High Court has explained what every parent knows and science has confirmed: that "[a] lack of maturity and an underdeveloped sense of responsibility are found in youth more often than in adults" and "[t]hese qualities often result in impetuous and ill-considered actions and decisions." *Roper v. Simmons*, 543 U.S. 551, 569 (2005). The "transient rashness, proclivity for risk, and inability to assess consequences" of the youthful brain both lessens "moral culpability" and increases the likelihood that, as they develop neurologically, their "deficiencies will be reformed." *Graham v. Florida*, 560 U.S. 48, 68 (2010). These qualities of youth "render suspect" any conclusion that a young offender "falls among the worst." *Roper*, 543 U.S. at 570.

Nor do these qualities disappear when the child turns 18. *Roper*, 543 U.S. at 574. The American Academy of Pediatrics has found "increasing evidence that brain development has not reliably reached adult levels of functioning until well into the third decade of life." American Academy of Pediatrics. Policy Statement: Age Limit of Pediatrics. Pediatrics (journal). Vol. 140, Issue 3, Sept. 2017, available at https://publications.aap.org/pediatrics/article/140/3/e20172151/38333/Age-Limit-of-Pediatrics. Brain science recognizes that young people "(1) tend to be more strongly motivated by the possibility of reward than adults; (2) have greater difficulty

2

controlling their impulses; and (3) have greater difficulty recognizing and regulating emotional responses" and that these attributes continue to develop through early adulthood. Brief for the American Medical Association and American Academy of Child and Adolescent Psychiatry as Amici Curiae in Support of Neither Party, *Miller*, 567 U.S. 460, 2012 WL 121237, 7-11. Moreover, brain-imaging techniques reflect the biological basis for these differences evolving well into late adolescence, highlighting differences in the physical structure of the brain, its makeup, and its ways of processing input. *Id.* at 13-30; *see also*, Center for Law, Brain & Behavior at Massachusetts General Hospital, *White Paper on the Science of Late Adolescence: A Guide for Judges, Attorneys and Policy Makers* 2 (2022) available at https://clbb.mgh.harvard.edu/wp-content/uploads/CLBB-White-Paper-on-the-Science-of-Late-Adolescence-3.pdf (hereinafter "White Paper").

And, while late adolescents take more risks, engage in more sensation-seeking behavior, and are more likely than young adults to respond to immediate outcomes and less likely to delay gratification, most "will not continue to offend through their twenties, thirties and beyond." *White Paper* at 2. Science shows the behavioral qualities of adolescents reflect their incomplete "sense of self" - one significantly influenced by their maturity and surrounding social environment. Brief for the American Psychological Association et. al. as Amicus Curiae in Support of Petitioners, *Miller*, 567 U.S. 460, 2012 WL 174239, 19. This process of identity change "typically remains incomplete until *at least* the early twenties" when a more permanent personality becomes established. *Id.* at 19-20 (emphasis added). In other

3

words, poor decision-making and antisocial behaviors are ones many outgrow with time. *Id.* at 21.

Here, Malik was in his early 20s when he was acting out sexually through pornography, multiple sexual partners, underage sexual partners, and videotaping his sexual exploits. At sentencing, Dr. Sheila Rapa, a forensic psychologist with whom this Court is familiar, will testify that, while Malik's conduct was both egregiously inappropriate and admittedly illegal, his immature brain likely contributed to his impulsivity, thrill seeking behavior, and failure to consider consequences. She will discuss the research that suggests young adults, like Malik, tend to do much better in treatment than their older counterparts because it is easier to change sexual behaviors not yet ingrained. And she will describe the protective factors in Malik's life that bode well for him if he engages in such treatment.

### B. Section 2G2.1 fails to distinguish between the least and worst offenders.

While this Court must properly calculate an advisory guideline range, it may reject that range "based on a policy disagreement" with the particular guideline at issue. *Spears v. United States*, 555 U.S. 261, 264 (2009); *see also Kimbrough v. United States*, 552 U.S. 85, 109 (2007). Here, this Court should place little weight on the guideline recommendation because, despite the Sentencing Commission's stated goal of "proportionality in sentencing," U.S.S.G. § 1A1.3, section 2G2.1 fails to distinguish between the least and worst production offenders. *Jacob*, 631 F. Supp.2d at 1114-15; *see also United States v. Price*, 775 F.3d 828, 841 (7th Cir. 2014) (affirming the district

4

court's decision to categorically reject the advisory guideline range for the same reasons). A comparison of this case to other section 2G2.1 cases illustrates the point.

Here, Malik, a first-time offender, used the internet to solicit, and later engage in, consensual, sexual relationships with two 15-year old minors, which he also recorded, while he was in his early twenties. For this conduct, section 2G2.1 recommends a sentence of life in prison – the maximum punishment the statute permits. But that section also recommended the statutory maximum for a defendant in his forties who travelled to Asia over 4-5 years to record his rape, sodomization, humiliation, and torture more than 50 children, some as young as four years old. *See United States v. Irey*, 612 F.3d 1160, 1166-68 (11th Cir. 2010). And again, for a defendant who victimized his stepdaughter for more than a decade starting when she was only eleven years old, videotaping himself raping her, beating her until she cried and begged him to stop, and even inviting another adult male to do the same. *United States v. Dean*, 635 F.3d 1200, 1202-03 (11th Cir. 2011). Other defendants who physically, sexually abused prepubescent minors have received the same recommendation. *United States v. Fox*, 926 F.3d 1275 (11th Cir. 2019) (sentencing defendant who sexually abused his prepubescent granddaughters on a nightly basis for over a year); *United States v. Harrelson*, 781 Fed. Appx. 841 (11th Cir. 2019) (affirming sentence for defendant who made multiple videos of himself having sex with a nine-year old girl).

While Malik's actions are less egregious than the conduct of each of these defendants, section 2G2.1 treats him no differently. Though ironically, none of those

5

defendants received a life sentence because their statutory maximums were just 30 years. Moreover, neither Malik's lack of any criminal history nor his decision to accept responsibility yield him any relief. Even with a criminal history category I and a 3-level reduction for acceptance, his guideline range remains the same: life. This kind of absurd result explains why district courts have imposed below guidelines sentences for more than 60 percent of section 2G2.1 cases.[1]

### C. Comparison of Malik's case to several recent, local cases is instructive.

In *United States v. Andrew Melendez-Gonzalez*, Case No. 19-CR-80208-DMM, the 20-year-old defendant admitted to soliciting sexually explicit images and videos from a 15-year-old minor in the Philippines. After the young girl's mother discovered and tried to end the relationship, the defendant responded with threats of violence and public exposure of the prior images and videos the girl had sent. Unlike Malik, the defendant was on state probation for very similar behavior. In that case, he had actual sex with a 15-year-old minor and had solicited and received sexually explicit images from her as well. When she tried to end the relationship, he made good on his threats to post those images online. Still, Judge Middlebrooks sentenced him to 240 months, rejecting the guideline range (which also called for the maximum possible

---

[1] Undersigned counsel used the Sentencing Commission's Interactive Data Analyzer found at https://ida.ussc.gov/analytics/saw.dll?Dashboard to make this determination. To access the specific data, from the top ribbon menu, select "Guideline Application" hyperlink, then select "Sentences Relative to Guideline Range." From there, use the "Primary Guideline" filter to select § 2G2.1. Then scroll down to the *Sentences Imposed Relative to Guideline Range* data table for raw numbers and percentages.

sentence) and the government's recommendation of 30 years.

In *United States v. Marco Orrego*, 17-CR-80097-DMM, Judge Middlebrooks again imposed a 240-month sentence, this time with the government's approval, after the defendant pled guilty to one count of sex trafficking of a minor and one count of production of child pornography. This defendant had sex with a 16-year-old girl on multiple occasions, photographed and videotaped his encounters, and then acted as her pimp. He also helped her place an advertisement on Backpage.com that offered her sexual services, encouraged her to have sex with other men for money, and then profited from her encounters with those men. The victim complied because she was "extremely scared" and "had nowhere to go."

In *United States v. Jeffrey Holcombe*, Case No. 21-CR-20261-RAR, Judge Ruiz imposed a 230-month sentence after the defendant pled guilty to one count of production of child pornography. There, the defendant, a 49-year-old man, met a 13-year-old girl on the internet and engaged in an online sexual relationship. When the victim told him she did not want to send any more images or videos, he threatened to sell her previously disclosed images online, post them around the neighborhood where she lived, and find her and her family. At one point during their chats, the defendant asked the victim to insert a hairbrush into her rectum – a request with which she complied.

Finally, in *United States v. Christian Sandoval*, Case No. 22-CR-60037-RAR, Judge Ruiz sentenced the defendant to 231 months in prison after he admitted enticing an eight-year-old girl to send him sexually explicit images of herself. He

repeatedly asked her for the images, directed her on how and where to produce them, and overcame her reluctance by sending her images of another eight-year-old girl with her vagina exposed. The images she sent him included one of her penetrating her vagina, as he instructed. While Judge Ruiz ultimately imposed a 231-month sentence, it is important to note the government in that case *actually recommended* a sentence of just 180 months.

It is difficult to see how anyone could describe Malik's conduct as worse than that of any of these defendants and this Court should fashion a sentence that reflects this fact.

### D. This Court can reasonably protect the public without sentencing Malik to life in prison.

The Adam Walsh Act permits the government to seek continued detention at the end of a sexual offender's prison sentence if it believes he remains sexually dangerous at that time. 18 U.S.C. § 4248. Thus, this Court need not decide today whether a life sentence is necessary to protect society from Malik in the future. It can wait to see what impact a shorter, but still lengthy, prison sentence has on him before deciding whether he is too dangerous to release.

This Court can also order a lengthy period of supervised release, allowing probation to monitor his behavior with the constant threat of additional incarceration if he fails to comply. Moreover, regardless of any term of supervised release, federal law, and all state laws, require him to register as a sexual offender upon his release from prison. As such, any community in which he chooses to live will be aware of any remaining danger he may present, and law enforcement can monitor him accordingly.

Simply stated, this Court need not incarcerate Malik for the rest of his life to protect society from him.

### E. "Mercy bears richer fruits than strict justice."
### ~ Abraham Lincoln

While "[m]ercy is seldom included on the list of "traditional" rationales for sentencing," section 3553 evinces Congress' intent – this Court should impose the "lowest possible penalty consistent with the goals of sentencing." *United States v Blarek*, 7 F. Supp. 2d 192, 210 (E.D.N.Y. 1998); *see also* 18 U.S.C. § 3553(a). "The notion that undue harshness should be avoided by those sitting in judgment has long been a part of the human fabric and spirit. Lenity is often the desirable route." *Id*. Here, for all of the reasons noted, Malik begs this Court's mercy.

WHEREFORE, the Defendant, MALIK ATKINSON, respectfully requests this Court grant this motion for a downward variance.

Respectfully submitted,

HECTOR A. DOPICO
INTERIM FEDERAL PUBLIC DEFENDER

*s/Scott Berry*
Scott Berry, B.C.S.
Assistant Federal Public Defender
Attorney for Defendant
Bar Number: 0525561
250 South Australian Avenue
Suite 400
West Palm Beach, Florida 33401
Phone: (561) 833-6288
Email: scott_berry@fd.org

9

CERTIFICATE OF SERVICE

I hereby certify that on March 29, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*s/ Scott Berry*
Scott Berry